286 F.2d 127
 LOCAL 1545, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA, AFL-CIO, Plaintiff-Appellant,
v.
Merle D. VINCENT, Jr., Regional Director for the Third
Region of the National Labor Relations Board,
Defendant-Appellee, and United Furniture Workers of America,
AFL-CIO, Intervenor-Defendant-Appellee.
 No. 191, Docket 26578.
 United States Court of Appeals Second Circuit.
 Submitted Oct. 19, 1960.
Decided Dec. 19, 1960.
 
 Charles H. Tuttle of Breed, Abbott & Morgan, New York City (Daniel F. O'Connell, Charles J. Lipton and George S. Tulloch, Jr., New York City, on the brief), for plaintiff-appellant.
 Herman M. levy of National Labor Relations Board, Washington, D.C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Duane B. Beeson and Herman M. Levy, Washington, D.C., Attorneys, on the brief), for defendant-appellee.
 Martin Raphael, New York City, for intervenor-defendant-appellee.
 Before CLARK, MOORE and FRIENDLY, Circuit Judges.
 
 
 1
 FRIENDLY, Circuit Judge. Plaintiff-appellant, Local 1545, United Brotherhood of Carpenters and Joiners of America, entered into an agreement, dated Mary 1, 1957, with Pilgrim Furniture Company, Inc., a New York corporation operating in Kingston, N.Y., whereby, inter alia, Pilgrim recognized Local 1545 as the exclusive bargaining representative for all Pilgrim's production and maintenance employees. On May 1, 1959, the agreement ws amended to make it effective until May 1, 1961, and for annual periods thereafter unless notice of termination was given sixty days prior to any expiration date. By Article III Pilgrim agreed 'that after notice by the Union it will not purchase materials from any Company where a bona fide labor dispute exists to which the Carpenters Union is a party.' Article XX, entitled 'Federal or State Laws,' contained a provision which we quote in the margin.[1] Article III, hereafter referred to as a 'hot-cargo' clause, was not unlawful in May, 1957 or 1959. See Local 1976, United Brotherhood ofCarpenters and Joiners v. N.L.R.B., 1958,357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186.
 
 
 2
 On February 5, 1960, intervenor-appellee, United Furniture Workers of America, filed a petition pursuant to 9(c) of the National Labor Relations Act, 29 U.S.C.A. 159(c), requesting a representation election of Pilgrim's production and maintenance workers. The Board assigned the petition for hearing; Local 1545 was permitted to intervene. The Local and Pilgrim contended that the subsisting collective bargaining agreement precluded a new election under the Board's 'contract-bar' rule. However, on August 24, 1960, the Board, by a 3-2 vote, issued its decision and direction of election.
 
 
 3
 The majority of the Board declined to recognize the agreement between Pilgrim and Lcoal 1545 as a bar because Article III was held to be a clause of the type proscribed by 8(e), 29 U.S.C.A. 158(e), added to the National Labor Relations Act by the Landrum-Griffin Act, effective November 13, 1959, 73 Stat. 519, 543, 704(b), providing, insofar as here pertinent:
 
 
 4
 'It shall be an unfair labor practice for anylabor organization and for any labor organization and or agreement * * * whereby such employer * * * agrees to cease or refrain from handling * * * the products of any other employer * * * and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *'
 
 
 5
 The majority held that the statute constituted a declaration that, save for exceptions not here applicable, hot-cargo clauses were against the policy of Ocngress and, hence, that a contract containing such a clause ought not be given effect as barring an election, even if it were to be assumed that, as distinguished from contracts with invalid union security clauses, 'Section 7 rights are not involved.'[2] Dissenting opinions were filed by Chairman Leedom and Member Fanning, on the ground that the majority's application of 8(e) to a hot-cargo clause antedating the effective date of the Landrum-Griffin Act went beyond the action of Congress, which had simply made such a clause invalid, and served no public purpose.
 
 
 6
 Local 1545 thereupon brought this action, in the District Court for the Southern District of New York, against the Regional Director for the region including Kingston to enjoin the enforcement of the Board's decision and direction of election and the holding of an election thereunder. United Furniture Workers of America was permitted to intervene as a defendant. The District Court temporarily restrained the election pending the hearing of a motion for a temporary injunction. The Regional Director moved to dismiss on the grounds that the Court was without jurisdiction of the subject-matter, that the complaint failed to state a claim warranting judicial relief and that the Court lacked jurisdiction over the members of the National Labor Relations Board who were indispensable parties. Judge Dimock found the third ground of the motion to be without merit, citing Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, a point upon which we do not pass, but upheld the first two, which he considered to be interrelated. 187 F.Supp. 921. Local 1545 appealed from his order of dismissal. A motion for a stay having been argued to a court of three judges, the Court, with the agreement of the parties, directed that briefs be filed and the appeal be deemed submitted on the merits; meanwhile the election was stayed. We affirm Judge Dimock's decision that the relief sought by appellant was beyond the jurisdiction of the District Court.
 
 
 7
 Fitzgerald v. Douds, 2 Cir., 1948, 167 F.2d 714, held that, in general, the District Court was without jurisdiction to enjoin directions by the Board with respect to representation matters, there the holding of a hearing, under 9(c) of the National Labor Relations Act, 29 U.S.C.A. 159. Judge Swan, writing for Judge Learned Hand and himself, pointed out that 10, 29 U.S.C.A. 160, was the only section of the Act which conferred jurisdiction on the courts, in that instance the courts of appeals; that such jurisdiction related only to 'orders' restraining unfair labor practices, see American Federation of Labor v. N.L.R.B., 1940, 308 U.S. 401, 409, 60 S.Ct. 300, 84 L.Ed. 347; and that 9(d) directed taht when an order under 10(c) prohibiting an unfair labor practice, based in part upon a certification following an investigation pursuant to 9(c), is to be enforced or reviewed under 10(e) or 10(f), the certification and the record of the investigation shall be included in the record required to be filed with the court of appeals. This the majority conceived to be the only judicial relief that Congress intended to grant with respect to certification or steps antecedent thereto.
 
 
 8
 Subsequently, two exceptions to this general rule excluding District Court jurisdiction to enjoin Board directions in representation matters have been recognized.[3] The first was this Court's decision in Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 723, relating to cases where the plaintiff advances a claim of denial of constitutional rights, in that case lack of procedural due process, which is 'not transparently frivolous.' Thereafter a second exception was announced, first by the Court of Appeals of the District of Columbia and later by the Supreme Court, in Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, where the Board had acted in direct and in that case conceded contravention of a specific mandate of 9, there 9(b)(1). The appellant, Local 1545, contends it comes within both exceptions. It says that what it terms a retroactive application of the Landrum-Griffin Act so as to deprive its contract of normal effect has denied it due process, and that the Board has directly contravened 8(e) by applying to hot-cargo clauses in existing agreements a heavier sanction than Congress imposed.
 
 
 9
 Determination of the validity of these contentions requires analysis of the Board's contract-bar rule. The rule does not find its source in any express language of the statute. So far as here material, Section 9(c)(1), 29 U.S.C.A. 159(c)(1), as amended by the Taft-Hartley Act of 1947, 61 Stat. 143, 144, directs that whenever a petition shall have been filed by a labor organization in accordance with such regulations as any be prescribed by the Board, alleging that the labor organization currently recognized no longer represents a majority, the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists, shall provide for appropriate hearing upon due notice, and if the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election and shall certify the results thereof. The only provision of the Act that may have the effect of protecting existing agreements is 9(c)(3), 29 U.S.C.A. 159(c)(3), which commands that 'No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held.'
 
 
 10
 In its early days the Board had no 'contract-bar' rule. It held rather that the employees were always free to change their representatives 'while at the same time continuing the existing agreements under which the representatives must function.' New England Transportation Co., 1 NLRB 130, 138-39 (1936). The rule appears to have emerged, almost imperceptibly, in Superior Electrical Products, 6 NLRB 19, 22 (1938). By 1942 it was sufficiently defined that the Board, in its Seventh Annual Report, p. 155, described it as follows:
 
 
 11
 'The Board has normally refused to proceed to an election, in the presence of a collective bargaining contract, where the contract, granted exclusive recognition, is to be effective only for a reasonable period and was negotiated by a union representing at the time a majority of the employees, prior to any claim by a rival labor organization.'The contract-bar policy was taken note of when Congress amended the National Labor Relations Act in 1947,[4] as it also has been by the courts. However, the policy remains that of Board and one 'Which the Board in its discretion may apply or waive as the facts of a given case may demand in the interest of stability and fairness in collective bargaining agreements.' N.L.R.B. v. Grace Co., 8 Cir., 1950, 184 F.2d 126, 129; see also Kearney & Trecker Corp. v. N.L.R.B., Cir., 210 F.2d 852, 857, certiorari denied 1954, 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed. 649.[5]
 
 
 12
 This is sufficient to dispose of appellant's attempt to bring the case within the exception relating to denial of constitutional rights. The rights conferred upon Local 1545 by the exclusive bargaining agreement were subject to a 9(c) of the National Labor Relations Act. Congress was not bound to establish a contract-bar rule or to require the Board to establish one. See Louisville & Nashville R. Co. v. Mottley, 1911, 219 U.S. 467, 483, 31 S.Ct. 265, 55 L.Ed. 297. The Constitution thus imposes no shackles on the freedom of the Board to limit or not to limit the disestablishment of an exclusive bargaining representative. Having chosen to impose a limit, the Board may from time to time alter its standards, as in fact it has frequently done,[6] and make its new standards applicable to existing as well as future agreements. Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108, 1960, 107 U.S.App.D.C. 357, 278 F.2d 237, 241-244. Decision by the Board to withdrawn contract-bar protection from agreements containing hhot-cargo clauses, existing as well as future, if made without benefit of the Landrum- Griffin amendment, would have raised no constitutional issue. Attack upon a decision to the same effect that is founded on that amendment does not acquire constitutional status merely because the Board's interpretation of the amendment may have been wrong.
 
 
 13
 Appellant's endeavor to bring its case within the further exception announced in Leedom v. Kyne, supra, fares no better if that decision is confined, as the Supreme Court stated, 358 U.S. at page 188, 79 S.Ct. at page 184, to 'an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.' There the conflict was plain. Section 9(b)(1) declared that the Board 'shall not' decide that any unit including professional and non-professional employees is appropriate for collective bargaining unless a majority of the professionals vote for inclusion. The Board conceded it had done exactly what it was forbidden to do. Here it cannot even be argued that the Board violated any command of 9; the claim is that it violated 8(e). The contention is that Congress carefully distinguished between existing and future agreements containing hot-cargo clauses. Future agreements were made unfair labor practices; existing agreements were dealt with only by the clause which directs that 'any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void.' Appellant argues that by using the words 'to such extent' Congress commanded the Board to give no other effect to the presence of a hot-cargo clause in an existing agreement, and that the Board's doing so thus comes within the precise language of Leedom v. Kyne. The argument places too heavy a strain on the quoted words-- their purpose seems to have been simply to make clear that the presence of a hot-cargo clause in an agreement should not invalidate other provisions such as those relating to wages and hours. In another sense the argument proves too much. The 'to such extent' language applies not only to existing but to future agreements; yet it can hardly be contended that Congress meant to require the Board to give contract-bar protection to an agreement the making of which was an unfair labor practice. Leedom f. Kyne would be precisely applicable only if the Landrum-Griffin amendment had said that the Board should not deprive existing agreement, or existing and future agreements, of contract-bar protection solely because of hot-cargo clauses; this it did not do.
 
 
 14
 If appellant is to prevail, it must therefore be on the basis that Leedom v. Kyne cannot rationally be restricted to the case of flouting a clear statutory command but must be taken to recognize jurisdiction of the District Court to enjoin representation orders whenever there is a colorable allegation that the Board has misread the declared will of Congress and the remedy afforded by 9(d) is likely to prove inadequate, as it would be for appellant here if appellant were to lose the election and Pilgrim entered into a contract with its Board-certified rival.[7] Fears that Leedom v. Kyne had opened exactly such a Pandora's box were expressed in Mr. Justice Brennan's dissent, 358 U.S. at pages 195-196, 79 S.Ct. at pages 187, 188, and by a leading commentator on labor law, Cox, The Major Labor Decisions of the Supreme Court, October Term, 1958, reprinted in Gellhorn & Byse, Administrative Law (4th ed. 1960), 441, 443. However, dissenting opinions are not always a reliable guide to the meaning of the majority; often their predictions partkae of Cassandra's gloom more than of her accuracy. Up to this point, at least, there has been no tendency to expand the exception. Since Leedom v. Kyne, the Court of Appeals for the District of Columbia, where most suits to enjoin the Board have been brought in order to avoid the problem whether regional directors are sufficient parties defendant, has resisted every effort to apply that decision to orders in 9(c) proceedings, alleged to violate statutory or constitutional commands, National Biscuit Division v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101, certiorari denied 1959, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (9(c)(2)); Leedom v. Norwich, Connecticut, Printing Specialities and Paper Products Union, 107 U.S.App.D.C. 170, 275 F.2d 628, certiorari denied 1960, 362 U.S. 969, 80 S.Ct. 955, 4 L.Ed.2d 900 (9(b)(2)); International Association of Tool Craftmen v. Leedom, 1960, 107 U.S.App.D.C. 268, 276 F.2d 514 (9(c)(5) and 9(b)); Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108, supra (due process clause of Fifth Amendment), the first and last of these involving the contractbar rule. The opinions in the last two cases were by Judge Bazelon, who had written for the Court of Appeals in Leedom v. Kyne; the point, made in the earlier opinion, 249 F.2d at page 492, that as a practical matter dismissal of a suit for an injunction would deprive the plaintiff union of any remedy seems to have been equally applicable in these post-Kyne decisions. It did not prevail because the plaintiffs in them did not show a violation of a 'clear statutory command,' 275 F.2d at page 631, or of 'any 'clear and mandatory' provision of the Act,' 276 F.2d at page 516, which the Supreme Court's ruling was thought to demand; it was not enough that the Court of Appeals might not 'sustain the Board's view if the question were presented to us in an appeal under the judicial review provisions of 10 of the Act,' 276 F.2d at page 516. To be sure, the distinction between violation of a clear and of a not so clear statutory command is neither completely satisfying nor, save where violation is conceded, as it was in Leedom v. Kyne, readily applied. However, the distinction seems to us to have been made by the Supreme Court in carving out what was intended to be a narrow exception to a rule that is founded on important considerations of history and policy. Applying the distinction, we think the most the appellant has shown is a possible excess of zeal by the Board in reading the will of Congress and consequent use of an erroneous standard in withdrawing the protection of its contract-bar rule; there was no violation of a 'clear statutory command' or, indeed, as we read 8(e), of any command at all.
 
 
 15
 The judgment is affirmed and the stay vacated.
 
 
 16
 LEONARD P. MOORE, Circuit Judge (dissenting).
 
 
 17
 Very few Labor Board cases lend (or should lend) themselves to broad generalities. For this reason, review should be restricted to the specific issues posed, and passed upon, by the Board and the District Court. Local 1545 has a contract effective until May 1, 1961. United Furniture Workers of America, desirous of securing Local 1545's present representation, petitioned for an election. Local 1545 equally desirous of holding on to its representation resists. The Board found (three to two) that 'Clearly, if the contract is valid for contract bar purposes, the petition is not timely filed and must be dismissed.' This language can be interpreted only as a statement that for some reason the three majority members believed that the contract was invalid; otherwise they too would have voted to dismiss the petition. The Board majority confined their finding of invalidity to a single point, namely, that an agreement which contains a 'hot-cargo' clause now 'proscribed by Section 8(e),' although valid when included in the Contract (May 1, 1957; May 1, 1959), is invalid. They then indulge in a completely illogical (in my opinion) 'non sequitur' by saying that unless they hold a representation proceeding (merely an election between rival unions), they will 'be giving force and effect to such (hot-cargo) clauses' despite the fact that the 'hot-cargo' clause (1) is not involved here in any way; (2) was never used or taken advantage of so far as the record discloses; (3) was valid when made; and (4) was of no effect when made void and unenforceable by Section 8(e). To dispel any doubt as to the basis for its decision, the Board majority said:'Accordingly, we now hold that a contract containing a provision proscribed by Section 8(e) of the Act will not bar an election, unless such provision is enforcible under the proviso to that section.'
 
 
 18
 and
 
 
 19
 'In view of the foregoing, we find that the current contract between the Employer and the Intervenor is not a bar to the petition * * *'
 
 
 20
 The belief that the Board majority would have upheld the contract bar but for their mistaken (in my opinion) view that Section 8(e) was, in effect, a Congressional mandate is further confirmed by the two minority opinions. I am in complete accord with the logical analysis of Congressional action and intent ably expressed by dissenting Board member Fanning as follows:
 
 
 21
 'The majority here is diverting the basic philosophy of the contract bar concept to a purpose other than that for which it was designed. The majority is abrogating a contract freely arrived at under the orderly and paceful procedures of collective bargaining in order to remedy an unfair labor practice committed under Section 8(e). This is outside the purview of a representation proceeding. Congress has provided a remedy under the unfair labor practice provisions of the Act, and the Board has repeatedly stated that it will not permit the litigation of an unfair labor practice in a representation proceeding.
 
 
 22
 'The majority, moreover, in its 'remedy' goes beyond the policy of Congress under Section 8(e) which it claims to be enforcing. The majority by refusing to find the contract a bar in this case is abrogating the contract in its entirety. Congress, however, in Section 8(e) provided that as to a 'hot cargo' clause 'any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void.' It did not provide that the whole contract was to be a nullity, as the majority in effect is holding in this case.'
 
 
 23
 I am not unmindful of the wide discretion vested in the Board in representation proceedings.[1] And I quite agree with the majority here that no constitutional or Leedom v. Kyne[2] question faces us. I do not agree, however, that there should be an assumption that there are only two exceptions to appellate non-interference and then, by exclusion from these categories, the conclusion should be reached that no review is available. Nor is it any answer, in my opinion, to say that the Board has the power (except as restricted by Sec. 9(c)(3), 29 U.S.C.A. 159(c)(3), to order an election regardless of any outstanding contract, valid or invalid. The Board has shown here that it was not exercising this power. I recognize that the exigencies of representation proceedings require that judicial review thereof should be kept to a minimum. I would hold, however, that the Leedom v. Kyne exception could safely be broadened to include situations where the Board has entirely misconstrued the import of a clear statutory provision in exercising its admittedly broad discretion. Because I do not believe Section 8(e) (as interpreted by the Board majority) applies to the resolution of the petition before the Board, I would continue the injunction but remand to the Board for a redetermination of the contract bar question unaffected by the prior assumption that the 1959 amendment (Sec. 8(e), in effect, vitiated the contract bar rule.
 
 
 
 [1]
 'In the event any Federal or State law or regulation or the final decision of any Court or Board of competent jurisdiction, directly or indirectly, affects any provision of his Agreement, or any one or more practices thereunder, the provision(s) or practice(s) so affected shall be amended to comply with the requirements of such law, regulation or decision, and otherwise this Agreement shall continue in full force and effect.'
 
 
 [2]
 By analogy to its decisions with respect to illegal union security provisions, see The Schnadig Corp., 123 NLRB 1934 (1959), the majority refused to recognize Art. XX as a cure
 
 
 [3]
 Perhaps we should add a third, although we do not think it relevant here. In Farmer v. United Electrical, Radio & Machine Workers of America, 1953, 93 U.S.App.D.C. 178, 211 F.2d 36, 39-40, certiorari denied 1954, 347 U.S. 943, 74 S.Ct. 368, 98 L.Ed. 1091, the Court of Appeals sustained District Court jurisdiction over a suit to enjoin the Board from declaring there was reasonable doubt as to the veracity of non-Communist affidavits and hence depriving the plaintiff union of status under 9(h). In a case involving the same question on the merits, Leedom v. International Union of Mine, Mill and Smelter Workers, 1956, 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201, the Supreme Court affirmed the direction of an injunction without discussing District Court jurisdiction. Such cases differ from those relating to action under 9(c), among other respects in the absence of the negative inference as to District Court jurisdiction over the latter derivable from the referene to 9(c) in 9(d)
 
 
 [4]
 Senate Report 105, 80th Cong.1st Sess., p. 258 states that the amendments proposed to 9(c)(1) do not affect 'the present Board's rules of decisions with respect to dismissal of petitions by reason of an inadequate showing of representation or the existence of an outstanding collective agreement as a bar to an election. In other words, the Board could still dismiss an employee or employer petition if a valid contract were still in effect.' The Conference Report, H.R. 510, 80th Cong.1st Sess., p. 50, explains that a provision in the House Bill, whereby certification of a new representative chosen while a collective bargaining agreement was in effect with another representative should not become effective unless the new representative adopted the existing contract, had been omitted in order to avoid 'an inference that the practice of the Board, with respect to conducting representation elections while collective bargaining contracts are in effect, should not be continued. * * *' While this legislative history negatives an argument that the Taft-Hartley amendment of 9(c) outlawed the contract-bar rule, as a lliteral reading might suggest, it is far from indicating a purpose to freeze the Board's handling of the rule
 
 
 [5]
 When the contract-bar rule is not applied and a new bargaining representative is selected, the Board does not consider the new representative bound by the contract's terms. American Seating Co., 106 NLRB 250 (1953)
 
 
 [6]
 'During the 26-year history of the Labor Board, it has altered the length of the bar no less than five times.' Leedom v. International Brotherhood of Electrical Workers, Local Union No. 108, 1960, 107 U.S.App.D.C. 357, 278 F.2d 237, 242, footnote 20. It has also altered its requirements as to the date of signature and ratification of contracts in relation to the filing of a petition, Appalachian Shale Products Co., 121 NLRB 1160, 1161-62 (1958); the terms required to be included in order that a contract may be a bar, ibid. at 1163; the number of personnel whose addition through merger will remove the contract as a bar, General Extrusion Co., 121 NLRB 1165, 1167-68 (1958); the effect of the inclusion of various types of union security clauses, Keystone Coat, Apron & Towel Supply Co., 121 NLRB 880, 883-86 (1958); and the effect of provisions excluding certain employees, Cessna Aircraft Co., 123 NLRB 855 (1959)
 
 
 [7]
 Even on such a view it would seem that the complaining union could well be required to await the election and the certification of another bargaining representative. See Professor Cox's article, cited below in the tex, at 448
 
 
 [1]
 See the many cases cited in the majority opinion
 
 
 [2]
 1957, 101 U.S.App.D.C. 398, 249 F.2d 490, affirmed 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210