Ivan C. McLEOD, Regional Director for the Second Region of The National Labor Relations Board, Appellant,

v.

LOCAL 476, UNITED BROTHERHOOD OF INDUSTRIAL WORKERS, Appellee.

No. 219, Docket 26541.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1961.

Decided March 14, 1961.

James C. Paras, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Duane B. Beeson, Washington, D. C., on the brief), for appellant.

Arnold Cohen, New York City (Herbert A. Simon, New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, MADDEN, Judge, United States Court

of Claims,* and WATERMAN, Circuit Judge.

MADDEN, Judge.

The National Labor Relations Board, after a formal hearing, conducted an election in the plant of Anton Electric Laboratories, Inc. The election was won by Local 431 of the International Union of Electrical, Radio and Machine Workers, AFL-CIO. The normal next step would have been the official certification by the Board of Local 431 as the collective bargaining agent of the employees in the unit covered by the election.

Another union, Local 476, United Brotherhood of Industrial Workers, the appellee herein, had taken the position that the Board should not hold the election because it, Local 476, had, at the time, an unexpired collective bargaining contract with the employer covering the same group of employees. Local 476 had intervened in the Board's hearing preceding the election, urging the Board not to direct an election. The Board, however, on April 18, 1960 directed an election, and its Regional Director, the appellant herein, set the election for May 12.

On April 28 the appellee, Local 476, filed its complaint in the District Court. The complaint recited the pertinent events and asserted that the Board's direction of election was illegal and was a violation of the appellee's right to due process of law. It asked for a temporary and a permanent injunction against the holding of an election, and for other appropriate relief. The appellant, the Board's Regional Director, defendant in the District Court, made a motion to dismiss the complaint. The District Court issued an "Interim Decision" in which it declined to interfere with the election, and deferred ruling on the motion to dismiss the complaint. The Board on May 12 conducted the election, and there were 53 votes for the appellee, Local 476, and 135 votes for its rival, Local 431.

On May 23 the District Court denied the motion of the appellant to dismiss the complaint, and set aside the election. On a motion by the appellant, the District Court on July 5 in effect remanded the case to the Board but the Board, after deliberation, did not modify its former decision. The court thereupon, on August 24, 1960, reaffirmed its decision, and the Regional Director took the instant appeal from that decision.

Local 476, the appellee, on May 22, 1959, had executed a collective bargaining agreement with the employer. It was a 33-page document. It provided that it was to be effective as of May 14, and was to expire on May 14, 1961. It contained a "union security" clause, no doubt intended to comply with the restrictions of section 8(a) (3) of the Taft-Hartley Act, 29 U.S.C.A. § 158(a) (3). The union informed the employer at the time of the execution of the contract that the contract would be submitted to union counsel for checking to make sure that its provisions were lawful. Counsel found that the union security clause of the contract was unlawful, in a respect which we shall not elaborate. On May 29, 1959, eight days after the execution of the contract, the union and the employer executed a supplemental agreement in which the union security clause of the contract was amended and made lawful. That was the situation from May 29, 1959 to January 18, 1960.

On January 18, 1960, Local 431 filed a petition with the Board's Regional Director, requesting that a representation election be held among the employees in question. The Board held a hearing to determine whether that should be done. Local 476 was, as we have seen, permitted to intervene in the hearing, and it urged that its contract with the employer, which still had more than a year to run, should be a bar to an election at that time.

■ It is, in general, the rule and practice of the Board that when there is a valid existing collective bargaining contract for a period of not longer than two years, the Board will not conduct an

* Sitting by designation.

election until the contract is nearing its expiration date. This doctrine is known as the "contract bar" doctrine. Its purpose is to promote the stability of employer-union relations. The contract bar doctrine is not applicable if the existing contract, asserted as a bar to a requested election, contains an illegal union security clause. In deciding upon the legality of union security provisions in collective bargaining contracts, the Board has encountered such provisions which are ambiguous and difficult of interpretation, or in which it is claimed that the provisions, as interpreted and administered by the parties, are different from the provisions as written. It has encountered situations in which provisions as originally written were illegal, but it is claimed that by oral agreements they have been changed and made legal.

In Keystone Coat, Apron and Towel Supply Company, 121 N.L.R.B. 880, the Board announced its abandonment of its former practice of considering and determining the ultimate contractual effect of such events as those referred to above, and its adoption of a rule of easy application. It said that its former practice had protracted the representation hearings and thus tended to frustrate the objective of securing an early determination of representation questions. The Board held that the "examination of a union-security or checkoff clause in a representation proceeding simply will be a matter of contract interpretation."

As the Board purported to apply the Keystone doctrine in the instant case, it was made to mean that if a collective bargaining contract as originally executed contained an illegal union security clause, that contract could never become a bar to a representation election no matter how completely or how promptly the illegal provision was eliminated by an amendatory provision. That is indeed a drastic application of the Keystone doctrine, and it is not surprising that it evoked violent protests on the part of the appellee.

The initial inquiry must be whether, assuming that the Board's Keystone doctrine, as interpreted and applied in the instant case, was unreasonably drastic and inconsiderate of the rights of the appellee, the District Court had the power to right the wrong. The search for the answer to that question is a test of the truth of the observation of Mr. Justice Holmes that "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963.

Public Resolution 44, approved June 19, 1934, 48 Stat. 1183, authorized the President to establish a National Labor Relations Board. Such a Board was established and was given the power to conduct representation elections by secret ballot. Though there was, at the time, much industrial strife, the Board in almost a year of existence, never succeeded in holding an election if there was objection to holding it. It was impossible to get litigation of such questions through the courts in such time that the decision would be of any use in preventing or solving labor trouble.

When, in 1935, the Wagner Act, 49 Stat. 449, 29 U.S.C.A. §§ 151–166, was drafted, this experience was fresh and vivid in the minds of the draftsmen. The Act provided for judicial review in the United States Circuit Courts of Appeals, of cease and desist orders issued by the Board in unfair labor practice cases. 29 U.S.C.A. § 160(e)–(f), but made no provision for judicial review of the Board's decisions in representation cases, except as those decisions might be later involved in unfair labor practice cases. Id. § 159(d). When the Taft-Hartley amendments were under consideration in Congress, specific proposals for judicial review of election proceedings were made and rejected. An excellent recital, with references to the relevant legislative history, of the non-action of Congress with regard to court review of the Board's actions in representation proceedings is in Justice Brennan's dissenting opinion, for himself and Justice Frankfurter, in Leedom v. Kyne, 358 U.S. 184, 191, 79 S.Ct. 180, 3 L.Ed.2d 210. Reference to the Supreme Court's

decision in that case is made hereafter in this opinion.

█ This court's recent decision in Local 1545, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Vincent, Regional Director of the National Labor Relations Board, 1960, 286 F.2d 127, involved questions closely comparable to those present in the instant case. The court recognized the general rule that the Board's decisions in representation cases could not be attacked in the District Courts, but also recognized that, upon that general rule, there had been engrafted two exceptions. The first exception was this court's decision in Fay v. Douds, 1949, 172 F.2d 720, 723, holding that if a plaintiff advances a claim of a denial of constitutional rights, in that case a denial of procedural due process, and the claim is "not transparently frivolous" the District Court should hear the case. The second exception was created by the decision of the United States Court of Appeals for the District of Columbia in Leedom v. Kyne, 1957, 101 U.S.App.D.C. 398, 249 F.2d 490, affirmed 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210. In that case the Board had proceeded in direct and conceded violation of the statute.

█ In the instant case the appellee urges that the complaint presents a substantial constitutional question and hence comes within the Fay v. Douds exception to the general rule. We perceive no constitutional issue in this case. That question is discussed in this court's opinion in Local 1545 v. Vincent, supra. Congress has left to the Board much freedom of action in its handling of representation matters, including questions of contracts as bars to elections. If the Board has, in the instant case, exercised its discretion unwisely, even unreasonably, that raises no constitutional issue. Congress, by its refusal to confer jurisdiction on the District Courts, and the courts, by their adoption of the general rule subject only to the two exceptions recited above, have made the important decision that an occasional unreasonable action by the Board, though it goes uncorrected by the courts, is a lesser evil than would be the frustration of seasonable elections by a broadened exposure of election questions to litigation. As is the case with any general rule, its application to particular cases may result in an injustice. If those injustices occur frequently enough, and are serious enough, they may cause Congress to amend the legislation, or may cause the courts to invent additional exceptions. This case does not create in us the urge to invent an additional exception. If it did so, the exception would be most difficult to define, or to confine within tolerable boundaries.

The District Court should have dismissed the complaint.

Reversed.