PACEMAKER CORPORATION, an Indiana Corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 12344.

United States Court of Appeals Seventh Circuit.

Nov. 13, 1953.

Larry S. Davidow, Davidow & Davidow, Detroit, Mich., Al. J. Spahn, Elkhart, Ind., for petitioner.

Thomas J. McDermott, Associate Gen. Counsel, Fannie M. Boyls, National Labor Relations Board, Washington, D. C., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., James C. Paras, Atty., National Labor Relations Board, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and HASTINGS and KNOCH, Circuit Judges.

DUFFY, Chief Judge.

Pacemaker asks us to review and set aside an order of the National Labor Relations Board dated May 15, 1958 and reported in 120 NLRB No. 133. In its answer the Board requests enforcement of the order. The Board found Pacemaker violated § 8(a) (2) and (1) of the Act by dominating the formation and administration of, and by contributing support to an employee committee which the Board found to be a labor organization within the meaning of the Act. The Board also found Pacemaker violated § 8(a) (3) and (4) of the Act, 29 U.S. C.A. § 158(a) (3, 4), by its discharge of Clifford Black.

Pacemaker Corporation is and has been engaged in the manufacture of mobile homes and house trailers in Elkhart, Indiana. At the time of the proceedings before the Board, it had 245 employees. There never had been a union in the plant.

In the summer of 1956, the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW), AFL-CIO, was attempting to unionize Pacemaker's employees. On August 28, 1956, the Union filed with the Labor Board a charge accusing Pacemaker of discriminatory action against employee Grise. On September 26, 1956, the Union filed its first amended charge restating the accusation of discriminatory action against Grise, and adding (a) the charge that three employees were discharged for labor union activities, and (b) two employees had been interrogated on the job about labor organization. On October 4, 1956, the Union waived further proceedings on its charges and elected to file a petition for a representation hearing and election.

A representation hearing was held on October 19, 1956 upon the question of whether the Union was entitled to have an election. The hearing was scheduled to commence at 10 a. m. Sometime previous to that hour on that morning, Pacemaker received a telegram from the Union requesting that five employees, including Clifford Black, be permitted to attend the hearing. Black requested permission of Conrad, his group leader, to leave the plant at 9:30 a. m. Conrad forwarded the request to the plant superintendent. At 8:30 a. m. Conrad informed Black that "he was free to go to the meeting; that the company could not hold [him] but [he] was leaving at [his] own risk." Black returned to work. About 9:25 a. m. Conrad came over to Black's bench and reminded him it was approaching the hour he wanted to leave. Black left at 9:30 a. m. and went directly to the hearing. At the morning recess Black was served with a subpoena, and he testified during the afternoon recess. Subpoenas likewise were issued for the four additional employees; two of these were served during the noon recess and they attended the afternoon hearing. The deputy sheriff who had the subpoenas for service was unable to serve the other two.

During the course of the representation hearing on October 19, the hearing officer indicated that the hearing could be concluded on that date. In the late afternoon the Union representative asked for an adjournment. Pacemaker objected, claiming a lack of good faith on the part of the Union. The hearing officer ordered an adjournment stating that the hearing would be resumed about November 1st. Before the adjourned date was reached, the Union filed a second amended charge adding to the original charges its claim that Black had been discharged on October 22, 1956 for his activities in behalf of the Union.

Upon the filing of the second amended charge, the regional office of N. L. R. B. refused to proceed further with the representation hearing. As a justification for such refusal, the Board points to a practice which it has adopted. This practice is not based upon statute or even a regulation, but the Board has determined it will not conduct a representation election where unfair labor charges have been filed by one of the parties.

■ The practice adopted by the Board is subject to abuse as is shown in the instant case. After due notice both parties proceeded with the representation hearing. Possibly for some reasons of strategy near the close of the hearing, the Union asked for an adjournment. Thereafter it filed a second amended charge of unfair labor practice. By such strategy the Union was able to and did stall and postpone indefinitely the representation hearing. In our opinion the Board's practice is unfortunate, but we do not think we have any power in the instant case to do anything about it. We cannot, as Pacemaker suggests, order that all action upon the Union's charges of unfair labor practices be held in abeyance until an election is held pursuant to the Union's representation.

We next consider the challenged finding of the Board that Clifford Black was discriminatorily discharged. Section 8 (a) (3) of the Act makes it an unfair labor practice for an employer to discourage membership in a labor organization by discrimination in regard to hire, tenure or any term of employment, while § 8(a) (4) safeguards those who testify "under the Act" from employer intimidation and reprisal. Pacemaker argues Black was guilty of deliberate insubordination in quitting his work to attend the hearing, emphasizing that he was told that if he left, it would be at his own risk. Pacemaker insists that Black deliberately walked off his job when he knew his employer desired that he continue his work.

■ Black had been elected as a member of the delegation of employees. He attended the meeting and testified. The request that he be excused from work was made in good faith. The action of group leader Conrad in reminding Black it was almost the time he desired to leave does not support the claim now made

that Black was under orders to remain on the job. When he received his paycheck on the following Monday, the superintendent told him that he was being discharged on advice of counsel. There was no suggestion of insubordination. There was no evidence offered by Pacemaker that Black's absence caused any interruption of production. We hold there is substantial evidence in the record to support the Board's finding that Black's discharge was discriminatorily motivated.

Pacemaker strongly argues that the employee committee was not a labor organization within the meaning of the Act. The Company insists the idea of the committee came from the employees, and that it was organized at their request. There were no officers or dues. There were no by-laws. There was an automatic arrangement whereby in the course of a year, every employee would have the opportunity of serving on the committee.

Section 2(5) of the Act, 29 U.S.C.A. § 152(5), defines the term "labor organization" to include "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

■ The employee committee at Pacemaker existed for the purpose, at least in part, of dealing with the Company concerning grievances, wages and conditions of work. The fact that there was no formal organization, by-laws, officers or dues is immaterial in determining whether it is a labor organization. This Court has held that such loosely formed committees do constitute labor organizations within the meaning of the Act. Indiana Metal Products Company v. N. L. R. B., 7 Cir., 202 F.2d 613, 621; N. L. R. B. v. American Furnace Co., 7 Cir., 158 F.2d 376, 378.

Pacemaker relies heavily upon Cabot Carbon Co. v. N. L. R. B., 5 Cir., 256 F.2d 281. We think this decision, insofar as it deals with employee committees is contrary to the previous decisions of this Court as well as with many decisions in other circuits. We respectfully disagree with the holding in Cabot Carbon. It is of interest to note that the Supreme Court, on October 20, 1958, granted certiorari and assigned the case to the Summary Docket.

■ We think that the finding of the Board that Pacemaker dominated the formation and administration of the committee, and contributed its support to it, is clearly supported by the evidence. The Company determined the number of employees to serve on the committee, and the manner of their selection. The Company also decided the time, date and place of meetings and paid the employees for attending. Company officials presided over such meetings and we hold that such employer conduct constitutes domination and support of the committee. Indiana Metal Products Co. v. N. L. R. B., supra.

Pacemaker complains because of the length of time required by the Board to pass upon the charges against it. It claims and asserts that it is seriously damaged because, if the Board's order should be sustained, Pacemaker would have to pay wages to Black from the time that he was discharged. The Company insists there is no justification for the time lag between the original charge filed August 28, 1956 and the decision and order by the Board on May 15, 1958.

■ It is indeed unfortunate that the charges were pending before the Labor Board for such a long period of time. However, we do not know anything about the causes of the delay, nor the state of the Board's calendar and, in any ordinary case, we would not have the authority to take any action based on such delay even though we were to believe that it was entirely unwarranted.

The motion of Pacemaker, the petitioner herein, to set aside the order of the Board will be denied, and the request of the Board for enforcement of the order will be granted.