**NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD and Bernard Samoff, Regional Director of the Fourth Region of the National Labor Relations Board, Defendants.**

**Civ. A. No. 71–881.**

United States District Court,
E. D. Pennsylvania.

May 6, 1974.

---

6. United States v. Poeta, 455 F.2d 117 (2d Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972).

Martin Vigderman, Freedman, Borowsky & Lorry, Philadelphia, Pa., Stanley B. Gruber, Law Office of Abraham E. Freedman, New York City, for plaintiff.

Glen M. Bendixsen, Chief of Special Litigation, Washington, D. C., Elliott Moore, Acting Asst. Gen. Counsel, N. L. R. B., Leonard Leventhal, Regional Atty., Region 4, N. L. R. B., Philadelphia, Pa., Douglas McDonald, Atty., N. L. R. B., Washington, D. C., for defendants.

## OPINION AND ORDER

FOGEL, District Judge.

This is an action brought by the National Maritime Union of America, AFL–CIO (hereinafter the Union) against the National Labor Relations Board (hereinafter the Board) and its Regional Director, to compel the Board to reinstate the petition, assert jurisdiction, and order a representation election in Contract Services, Inc. (Case No. 4–RC–8995).

The Board has filed a motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, asserting *First*: that this Court has no jurisdiction over the subject matter of the action, and *Second*: that the complaint fails to state a claim upon which relief can be granted.

The case presents the following issue for determination: Does a United States District Court have jurisdiction to compel the Board to order a represen-

tation election pursuant to § 9(c) of the National Labor Relations Act, as amended (hereinafter the Act), 49 Stat. 453, 61 Stat. 143, 29 U.S.C. § 159(c), when the Board has determined after a hearing that statutory jurisdiction over the enterprise exists, but has declined to exercise this statutory jurisdiction on the ground that it would adversely affect the foreign relations of the United States?

The procedural history of the case may be summarized as follows:

On January 11, 1971, the Union filed an election petition with the Regional Director of the Fourth Region of the Board, seeking a representation election among a unit of bus drivers, mechanics, dispatchers, and related personnel employed by Contract Services, Inc., in the Panama Canal Zone. The Regional Director dismissed the petition without a hearing, relying on the Board's decision in United Fruit Company, 159 NLRB 135 (1966), direct review denied, National Maritime Union v. NLRB, 267 F.Supp. 117 (S.D.N.Y.1967). The Union appealed the dismissal of the petition by the Regional Director; however, the Board denied the appeal and held that there was no compelling reason to depart from its decision in *United Fruit*, in which it had declined to assert jurisdiction in a matter involving attempted unionization of clerical employees of the United Fruit Company in the Panama Canal Zone because of negotiations between the governments of Panama and of the United States relating to future Panamanian sovereignty over the zone.

The Union thereupon instituted this action in the District Court, seeking to compel the Board to order a representation election, or, in the alternative, to compel it to conduct a hearing on the Union's election petition. The Board filed a motion to dismiss the complaint.

On November 9, 1971, this Court, per an Order of my former colleague, Judge Masterson, denied the motion to dismiss without prejudice and directed that a hearing be held to determine: *First*: whether the effect on foreign relations

is a valid factor for the Board to consider in declining to assert jurisdiction in the Canal Zone; *Second*: if so, whether the assertion of jurisdiction would adversely affect relations between the United States and Panama; *Third*: whether the Canal Zone is a state, foreign country or territory within the definition of commerce in § 2(6) of the Act; and *Fourth*: whether there were any other reasons why the Court should decline to order the Board to conduct a hearing or an election in the matter.

Because the Board reconsiderd its dismissal of the Union's petition, and remanded the case to the Regional Director for a hearing, the necessity for a hearing in the District Court was obviated. Pursuant to a stipulation entered into by the parties, the proceedings in this Court were stayed pending action by the Board.

On April 4, 1972, Hearing Officer Solomon S. Spector conducted a hearing and the record was thereafter transmitted to the Board for determination under § 9(c)(1) of the Act. On April 3, 1973, a three-member panel of the Board rendered a decision and once again dismissed the petition of the Union. Contract Services, Inc., 202 NLRB No. 156 (1973).

The Board found that the employer is a Delaware corporation, engaged in the operation of a local bus system transporting U.S. military dependents to and from school within the Canal Zone, on a five-year fixed cost contract with the U. S. Navy, which contract had been in effect since August 1, 1971. The Board further found that the annual dollar volume of services exceeded $250,000.00, and that annual equipment purchases from the continental United States exceeded $50,000.00. Hence, the Board concluded that "the Employer's volume of business, purchases, and relationship to our national defense bring it within our standards for the assertion of jurisdiction." *Contract Services, supra*, at p. 3 (slip opinion). Moreover, the Board also concluded that business operations by U.S. employers in the Panama Canal

Zone were included within the definition of "commerce" in § 2(6) of the Act, thus vesting the Board with the requisite statutory authority to assert jurisdiction over the matter. Notwithstanding these findings, however, the Board declined to assert jurisdiction because it concluded that such assertion under all of the circumstances of the case would adversely affect relations between the United States and Panama:

> * * * we are of the opinion that we ought not at this time reach out to inject further U.S. governmental regulation of matters affecting Panamanian citizens employed in the Canal Zone, when the entire matter of the scope and effect of this country's presence in that zone is a matter undergoing international negotiations. To assert jurisdiction for the first time in this Board's history at this particular juncture would be to risk a negative impact on negotiations. Having refrained thus far from exercising the full extent of our statutory jurisdiction by asserting jurisdiction in this distant area, we see no compelling reason to do so now, and have no desire to take any action which might be a factor in jeopardizing the prospects for a negotiated settlement of the respective rights and duties of the United States and the Panamanian government with respect to Canal Zone matters. *Contract Services, supra,* at p. 10 (slip opinion)

On May 22, 1973, the Union filed a motion in this Court to compel the Board to assert jurisdiction in the Canal Zone, and to conduct a representation election pursuant to § 9(c) of the Act. The Board renewed its motion to dismiss the complaint. Extensive memoranda were filed by the parties and oral arguments in support of their respective positions were heard thereafter.

For the reasons cited in this opinion, we will grant the Board's motion to dismiss the complaint, on the ground that this Court lacks jurisdiction over the subject matter of the action.

Because of the complexity of the issues presented in this case, we will discuss seriatim the decisions of the Supreme Court and the lower federal courts pertaining to the jurisdiction of a District Court to review representation proceedings of the Board under § 9(c) of the Act.

### I. *Leedom v. Kyne*

The Wagner Act became law on July 5, 1935, after a brief and unhappy experience with a predecessor statute, Public Resolution 44, June 19, 1934, 48 Stat. 1183, c. 677, which had permitted immediate judicial review of Board orders in representation proceedings in the Courts of Appeals. The legislative history of the Wagner Act establishes that Congress considered these review provisions to be the chief weakness of Public Resolution 44, because dilatory tactics by employers could indefinitely postpone representation elections. For this reason, § 9 of the Wagner Act was purposefully drawn to exclude any review of representation orders in the Courts of Appeals, except in the single category of cases involving unfair labor practice proceedings pursuant to § 10 of the Act.

In American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), the Supreme Court extensively reviewed this legislative history, and concluded that "Congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the Board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in § 9(d)." *AFL, supra,* at 411, 60 S.Ct. at 305. The Court expressly rejected the contention that the narrowly circumscribed review provisions of the Act should be relaxed when a union, rather than an employer, was seeking judicial review:

> An argument, much pressed upon us, is, in effect, that Congress was mistaken in its judgment that the hearing before the Board in proceedings under § 9(c), with review only when an or-

der is made under § 10(c) directing the employer to do something "provides an appropriate safeguard and opportunity to be heard", House Rep. p. 23, and that "this provides a complete guarantee against arbitrary action by the Board", Sen.Rep. p. 14. It seems to be thought that this failure to provide for a court review is productive of peculiar hardships, which were perhaps not foreseen in cases where the interests of rival unions are affected. But these are arguments to be addressed to Congress and not the courts. * * * AFL, supra, at 411–412, 60 S.Ct. at 305 (footnote omitted)

In a companion case, N. L. R. B. v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940), the Court applied the same reasoning to election orders of the Board.

In the *AFL* and *IBEW* cases, the Supreme Court construed the internal review provisions of the Wagner Act with respect to the extent that these provisions conferred jurisdiction on Courts of Appeals to directly review the action of the Board. The Court definitively concluded that the statutory scheme which confers jurisdiction must be examined to determine the inherent limitations of that jurisdiction. Thus the Court denied review of Board orders in representation proceedings when such review is sought in the Courts of Appeals, but did not categorically preclude a general judicial review, if original jurisdiction rests with the District Courts pursuant to 28 U.S.C. § 1337. This question was expressly reserved in *AFL*:

The Board argues that the provisions of the Wagner Act, particularly § 9(d), have foreclosed review of its challenged action by independent suit in the district court * * *. But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as

it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code, 28 U.S.C.A. § 41. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords a remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record. *AFL, supra,* at 412, 60 S.Ct. at 305.

Five years later, the Supreme Court again expressly reserved decision on the question of the jurisdiction of the District Courts to review certification proceedings under § 9(c). In Inland Empire District Council v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945), the Court avoided the jurisdictional issue by reaching the merits of the controversy, and concluded that the Board had not acted unlawfully.

Petitioners earnestly urge that this case presents the required showing of unlawful action by the Board and resulting injury. Unless they are right in this view, it would be inappropriate, as was said in the American Federation of Labor Case, to determine the question of reviewability. That question should not be decided in the absence of some showing that the Board has acted unlawfully. Upon the facts presented, we think no such showing has been made, whether by way of departure from statutory requirements or from those of due process of law. *Inland Empire, supra,* at 700, 65 S. Ct. at 1318.

The jurisdictional test proposed in *AFL* and *Inland Empire* is grounded upon the following three critical bases:

1. "unlawful" action by the Board;

2. injury to petitioners; and

3. a legal remedy, apart from the review provisions of the Wagner Act.

By focusing on the "unlawfulness" of the Board's conduct, however, the Court tended to blur the conceptual distinction between the jurisdictional and substantive aspects of a particular controversy.

In essence, the application of an "unlawfulness" test would appear to confer jurisdiction on the District Court for plenary review of *any* action by the Board, because an allegation of unlawful conduct requires the court, in the first instance, to examine the merits of the case in order to determine the threshold question of jurisdiction.

Accordingly, the landmark Supreme Court decision in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), must be considered within this context. Kyne involved a labor organization which petitioned the Board for certification as the exclusive bargaining agent for all nonsupervisory professional employees at a particular plant. The Board held a hearing on the petition, and concluded that the appropriate bargaining unit included the 233 professional employees in the plant, as well as 9 employees who were found to be nonprofessional employees, within the meaning of § 2(12) of the Act, but who shared a close community of employment interests with the professional employees. The union requested the Board to take a vote among the professional employees to determine if a majority favored inclusion in a bargaining unit composed of professional and nonprofessional employees. The Board refused to hold such an election, in spite of the clear prohibition of § 9(b)(1) of the Act, which provides that, in determining the unit appropriate for collective bargaining, the Board "shall not * * * decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such [a] unit." The union was subsequently certified as the exclusive bargaining agent

for both the professional and nonprofessional employees in the unit, but thereafter brought suit in the District Court to have the certification order set aside because of the inclusion of the nonprofessional employees. The Supreme Court held that, under these circumstances, the District Court had jurisdiction to grant the relief sought pursuant to 28 U.S.C. § 1337.

This suit is not one to "review", in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. Section 9(b)(1) is clear and mandatory. It says that, in determining the unit appropriate for the purposes of collective bargaining, "the Board *shall not* (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." (Emphasis added.) Yet the Board included in the unit employees whom it found were not professional employees, after refusing to determine whether a majority of the professional employees would "vote for inclusion in such a unit." Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a "right" assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given. Leedom v. Kyne, *supra*, at 188, 189, 79 S.Ct. at 184.

Justices Frankfurter and Brennan dissented in Leedom v. Kyne, arguing that the Court, in effect, was adopting an "unlawfulness" test, with the result that District Courts would be flooded with litigation which would defeat the carefully circumscribed review provi-

sions in § 10 of the Act.[1] Justice Brennan wrote:

I daresay that the ingenuity of counsel will, after today's decision, be entirely adequate to the task of finding some alleged "unlawful action", whether in statutory interpretation or otherwise, sufficient to get a foot in a District Court door under 28 U.S.C. § 1337. * * * Leedom v. Kyne, *supra*, at 195–196, 79 S.Ct. at 187.

However, the Supreme Court, in two subsequent decisions, held that District Court jurisdiction pursuant to the holding in Leedom v. Kyne is exceedingly narrow, and exists only when there are truly extraordinary circumstances.

In McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), the Board had ordered a representation election among seamen employed aboard vessels owned by a Honduran subsidiary of the United Fruit Company. With one exception, all of the employees were Honduran nationals, subject to the provisions of the Honduran Labor Code. The petitioner before the Board was the National Maritime Union, which under Honduran law was prohibited from representing the employees specified in the petition. Under international law, the law of the flag state (in that case Honduras, because all of the vessels were of Honduran registry) ordinarily governs the internal affairs of the ship. Under those circumstances, and in light of the possibility of international discord and retaliatory action by other governments, the Supreme Court held that the District Court had jurisdiction to strike down the election order of the Board.

Mr. Justice Clark wrote:

* * * Having examined the question whether the District Court had jurisdiction at the instance of Socie-

dad [the Honduran union] to enjoin the Board's order, we hold that the action falls within the limited exception fashioned in Leedom v. Kyne [citation omitted]. In that case judicial intervention was permitted since the Board's order was "in excess of its delegated powers and contrary to a specific prohibition in the Act." Id. 358 U.S. at 188, 79 S.Ct., at 183, 3 L. Ed.2d 210. While here the Board has violated no specific prohibition in the Act, the overriding consideration is that the Board's assertion of power to determine the representation of foreign seamen aboard vessels under foreign flags has aroused vigorous protests from foreign governments and created international problems for our government. Important interests of the immediate parties are of course at stake. But the presence of public questions particularly high in the scale of our national interest because of their international complexion is a uniquely compelling justification for *prompt judicial resolution* of the controversy over the Board's power. No question of remotely comparable urgency was involved in Kyne, which was a purely domestic adversary situation. *The exception recognized today is therefore not to be taken as an enlargement of the exception in Kyne.* Sociedad Nacional, *supra*, at 16, 17, 83 S.Ct. at 675 (Emphasis added.)

In the second case, Boire v. Greyhound Corporation, 376 U.S. 473, 84 S. Ct. 894, 11 L.Ed.2d 849 (1964), the Board concluded that Greyhound and Floors, Inc. were joint employers of a group of employees which constituted an appropriate bargaining unit, and directed an election among those employees. Greyhound filed suit in the District Court to set aside the decision of the Board and to enjoin the election. The

---

1. The dissenting Justices also noted that Congress had considered amending § 9(d) at the time the Taft-Hartley legislation was enacted in order to permit direct review in the Courts of Appeals of Board certifications upon the petition of any person interested. A House amendment which incorporated such a provision was rejected by the Senate for the same reasons that were previously advanced to defeat a similar proposal in the Wagner Act debates. The House yielded to the Senate and the review provisions of § 9(d) remained unchanged. *Kyne, supra,* at 193–194, 79 S.Ct. 180.

District Court found *First*: that jurisdiction existed under the rule of Leedom v. Kyne; and *Second*: held on the merits that Floors, Inc. was the sole employer of the employees in question, with the result that the Board had therefore violated the Act by directing an election when no employment relationship existed between the employees and the purported employer. The Supreme Court ruled that there was no jurisdiction under *Kyne*:

> * * * The argument is * * * that the present case is one which falls within the narrow limits of Kyne, as the District Court and the Court of Appeals held. The respondent points out that Congress has specifically excluded an independent contractor from the definition of "employee" in § 2(3) of the Act. It is said that the Board's finding that Greyhound is an employer of employees who are hired, paid, transferred and promoted by an independent contractor is, therefore plainly in excess of the statutory powers delegated to it by Congress. This argument, we think, misconceives both the import of the substantive federal law and the painstakingly delineated procedural boundaries of Kyne.
>
> Whether Greyhound, as the Board held, possessed sufficient control over the work of the employees to qualify as a joint employer with Floors is a question which is unaffected by any possible determination as to Floors' status as an independent contractor, since Greyhound has never suggested that the employees themselves occupy an independent contractor status. And whether Greyhound possessed sufficient indicia of control to be an "employer" is essentially a factual issue, unlike the question in Kyne, which depended solely upon construction of the statute. The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act. *Greyhound, supra,* at 481, 482, 84 S.Ct. at 899 (Emphasis added)

The decisions in *Sociedad Nacional* and *Greyhound* suggest that the Supreme Court has rejected the broad "unlawfulness" test adumbrated in *AFL* and *Inland Empire,* tests criticized by Justices Brennan and Frankfurter in *Kyne.* The proper jurisdictional standard is considerably narrower, although lower courts have had difficulty in determining its precise limits.

If *Kyne* is confined to its facts, the "exception" is very narrow indeed: the Board in that case had conceded that in commingling professional with nonprofessional employees in the bargaining unit, it "had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees." *Kyne, supra,* at 187, 79 S.Ct. at 183. The prohibition of § 9(b)(1) was quite specific, and there was little room for statutory interpretation: as the Court said, the provision was "clear and mandatory". *Kyne, supra,* at 188, 79 S.Ct. 180. If *Kyne* had been limited to the circumstances presented in that action, much of the subsequent litigation would never have arisen.

But, as commentators were quick to point out, the election and certification provisions of the Act contain many clauses which are not specific prohibitions of the type considered in *Kyne*; rather they are cast in language which is mandatory. See Cox, The Major Labor Decisions of the Supreme Court October Term 1958, 1959 Proceedings of A. B.A. Section of Labor Relations Law 23, reprinted in Gellhorn and Byse, Administrative Law 441 (4th Edition 1960). If such provisions were held to be sufficiently "clear and mandatory", the District Courts would have jurisdiction to

compel the Board to perform affirmative acts apparently required by the language of the Act.

This problem was discussed at length by Judge Friendly in a decision rendered shortly after Leedom v. Kyne was decided:

> If appellant is to prevail, it must therefore be on the basis that Leedom v. Kyne cannot rationally be restricted to the case of flouting a clear statutory command but must be taken to recognize jurisdiction of the District Court to enjoin representation orders whenever there is a colorable allegation that the Board has misread the declared will of Congress and the remedy afforded by § 9(d) is likely to prove inadequate, as it would be for appellant here if appellant were to lose the election and Pilgrim entered into a contract with its Board-certified rival. Fears that Leedom v. Kyne had opened exactly such a Pandora's box were expressed in Mr. Justice Brennan's dissent [in Leedom v. Kyne] and by a leading commentator on labor law, Cox, The Major Labor Decision of the Supreme Court, October Term, 1958, reprinted in Gellhorn and Byse, Administrative Law (4th Ed. 1960), 441, 443. However, dissenting opinions are not always a reliable guide to the meaning of the majority; often their predictions partake of Cassandra's gloom more than of her accuracy. Up to this point, at least, there has been no tendency to expand the exception. Since Leedom v. Kyne, the Court of Appeals for the District of Columbia, where most suits to enjoin the Board have been brought in order to avoid the problem whether regional directors are sufficient parties defendant, has resisted every effort to apply that decision to orders in § 9(c) proceedings, alleged to violate statutory or constitutional commands [citing cases]. * * * Local 1545, United Brotherhood of Carpenters v. Vincent, 286 F.2d 127, 132 (2d Cir. 1960).

In the years that followed the *Carpenters* decision, the forebodings of Mr. Justice Brennan and Professor Cox were proved to be prescient. In 1963, the Court of Appeals for the District of Columbia Circuit held that Kyne was applicable to the "shall certify" clause of § 9(c)(1), Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993 (1963), and the holding was followed in Bullard Company v. N. L. R. B., 253 F. Supp. 391 (D.D.C.1966), I. U. E. v. N. L. R. B., 67 L.R.R.M. 2361 (D.D.C.1968), and United Automobile, A. & A. I. Workers of America v. N. L. R. B., 317 F. Supp. 1162 (D.D.C.1970). The Court of Appeals for the Fifth Circuit has held that the *Kyne* rule applies to the "shall direct an election" clause of § 9(c)(1), at least when the Board refuses to process a decertification petition on the basis of a mechanically applied "blocking charge" policy, Templeton v. Dixie Color Printing Company, 444 F.2d 1064 (5th Cir. 1971), Surrat v. N. L. R. B., 463 F. 2d 378 (5th Cir. 1972).

While the Court of Appeals for the Third Circuit has not directly confronted the problem, its decisions on the subject have supported a generally restrictive view of the *Kyne* exception. See Firestone Tire & Rubber Company v. Samoff, 365 F.2d 625 (3d Cir. 1966); LaPlant v. McCulloch, 382 F.2d 374 (3d Cir. 1967).

From our review of the definitive decisions and commentaries thereon, we are persuaded that the exception enunciated in the majority holding in *Kyne* should neither be mechanically restricted to violations of "shall not" clauses in the Act, nor automatically extended to any clause which contains the word "shall" or similar language of apparently mandatory intent. Rather, it is the task of the District Court to carefully examine the provision in question, and to determine from the context, from the structure and purposes of the Act as a whole, from prior practice in the Board and decisions in the Courts, whether the

terms are indeed sufficiently "clear and mandatory" to confer jurisdiction under the rule of *Kyne*. This approach is not free of difficulty. But, as Judge Friendly wrote in *Carpenters*:

> * * * To be sure, the distinction between violation of a clear and of a not so clear statutory command is neither completely satisfying nor, save where violation is conceded, as it was in Leedom v. Kyne, readily applied. However, the distinction seems to us to have been made by the Supreme Court in carving out what was intended to be a narrow exception to a rule that is founded on important considerations of history and policy. * * * *Carpenters, supra,* at 133.

This standard has been criticized on the ground that the distinction between "illegal" and "clearly illegal" action by the Board is largely illusory. See Note, 66 Columbia L.Rev. 1546, 1551 (1966). But if Leedom v. Kyne is to have any application beyond cases in which the Board admits a violation of the Act— (and, after *Kyne*, such admissions have been rare)—and if at the same time, the Pandora's box created by *Kyne* is not to open and unleash the forces that will destroy the carefully circumscribed review provisions of the Act, an ad hoc test must be fashioned and applied by District Courts.

Professor Jaffe has compared the narrow jurisdictional standard under *Kyne* with the traditional scope of mandamus. After discussing the decisions in *Kyne* and *Sociedad Nacional,* he concluded that the proper standard could be expressed in terms of "the type of gross transgression for which we invoke the label 'jurisdictional' or 'clear errors of law' (the scope in mandamus)." L. Jaffe, Judicial Control of Administrative Action 348 (1963).

While we decline to adopt Jaffe's terminology, his analysis is useful, in that it rejects on logical and policy grounds a rigid insistence upon a violation of an express prohibition of the Act as a precondition of District Court jurisdiction, but confines such jurisdiction to an extremely narrow range of actions by the Board. It is only when the Board is guilty of "clear errors of law" —presumably, in those areas in which all courts agree a "gross transgression" has occurred—that District Court jurisdiction is properly invoked. Jaffe refers to judicial "intervention" rather than judicial "review", phraseology which indicates that recourse to the court under such circumstances is an extraordinary deviation from the procedure mandated in the review provisions of the Wagner Act.

We are aware that some lower courts have fashioned a broader test than that which we apply in the instant case. We are convinced, however, that a more expansive reading of Leedom v. Kyne opens the door to the type of plenary District Court review of Board orders that was condemned in Boire v. Greyhound. Such a test in essence is a return to the "unlawfulness" test which has been repudiated by the Supreme Court, and in fact leads to a hopeless commingling of the jurisdictional aspects with the merits of a given case.

This danger is well illustrated in two recent cases in the Court of Appeals for the Fifth Circuit, Templeton v. Dixie Color Printing Company, and Surratt v. N. L. R. B., *supra.* Both cases involved the application by the Board of its "blocking charge" policy, through which it will refuse to conduct a representation election when there are substantial unfair labor practice charges pending before the Board. There is no provision in the Act, nor in the Board's Rules and Regulations which authorize such a policy; nevertheless, this policy has been followed by the Board for more than three decades. See United States Coal & Coke Co., 3 N.L.R.B. 398 (1937). It is not an inflexible one, however, and in individual cases the Board has concluded that the policies of the Act are best effectuated by conducting an election rather than by postponing one. Columbia Pictures Corporation, 81 N.L.R.B. 1313 (1949). The blocking charge policy has

been subject to criticism, see Pacemaker Corp. v. N. L. R. B., 260 F.2d 880 (7th Cir. 1958), but it has also been explicitly approved by the Courts, Furr's Inc. v. N. L. R. B., 350 F.2d 84 (10th Cir. 1965). See also Surprenant Mfg. Co. v. Alpert, 318 F.2d 396 (1st Cir. 1963).

Subsequently, the Court in *Dixie Color Printing Company, supra,* concluded that the application by the Board of the blocking charge policy to hold in abeyance for three years an employee decertification petition was contrary to the specific mandate of § 9(c)(1), and therefore conferred jurisdiction on the District Court to compel the Board to process the decertification petition. The decision was based on the "particular circumstances" of the case, notably the long delay in resolving the pending unfair labor practice charges, and the Court did not purport to resolve the issue of the extent to which the blocking charge policy might be validly applied, or under what circumstances the Board might justifiably exercise its discretion in refusing to process a representation petition. *Dixie Color Printing Company, supra,* at 1070.

In *Surratt,* which reached the Court a year after *Dixie Color Printing Company,* the blocking charge policy was applied by the Board in a similar decertification context; however, the hearing on all pending unfair labor practice charges was to be held within five months after the Board finally dismissed the decertification petition, or approximately eight months after the original petition was filed with the Regional Director. The Court nevertheless relied on the earlier decision and found that the difference in delay was one of degree and hence was not a controlling principle. *Surratt, su-*

*pra,* at 381. The decision in *Dixie Color Printing Company* was said to rest on the mechanical application by the Board of the blocking charge policy "as a *per se* rule without exercising its discretion to make a careful determination in each individual case whether the violation alleged is such that consideration of the election petition ought to be delayed or dismissed." *Surratt, supra,* at 381. Under these circumstances, the District Court was said to have jurisdiction to compel the Board to exercise its discretion.[2]

■ The difficulties of such an approach are obvious. Beyond the problem of compelling the Board to exercise the discretion which in fact it purports to exercise, *Columbia Pictures Corporation, supra,* the real difficulty lies in the confusion of jurisdictional questions with those which go to the merits of the controversy. It may well be that the blocking charge policy is unwise, either generally or in particular circumstances. We do not doubt that Congress could legislatively change the policy, or that the Courts of Appeals in cases which properly reach them under § 10 could impose restrictions on its application. But the wisdom or legality of the policy is not immediately before the District Court under Leedom v. Kyne. If there is substantial disagreement about either the wisdom or legality of the policy—and the decisions of the courts indicate that there is such disagreement—then it simply cannot be said that the Board has violated a "clear and mandatory" provision of the Act, and jurisdiction therefore cannot be conferred upon District Courts by invoking Leedom v. Kyne.

2. The decisions in *Dixie Color Printing* and *Surratt* are also based on the fact that *employee* decertification petitions were blocked by *union* charges of unfair labor practices. The employees were thus "disarmed" by a union which the employees said no longer represented them. But there are two problems with such an approach: In the first place, there is no indication that the "exception" in these cases will not be expanded in future cases, as *Surratt* extended *Dixie Color Printing* to the case in which there is no inordinate delay by the Board. More fundamentally, however, it is hard to see why the provisions of § 9(c)(1) are "clear and mandatory" in one narrowly circumscribed situation and not "clear and mandatory, in other situations. Once again, this approach fails to distinguish issues of jurisdiction from those going to the merits of the case.

Within the proper framework of the *Kyne* and *Greyhound* decisions, and through application of the analytical techniques proposed by Judge Friendly and Professor Jaffe, we now turn to an examination of the contentions of the Union in the present case.

In essence, the Union contends that the provisions of § 9(c)(1) are mandatory, and that a purported violation of these provisions by the Board confers jurisdiction on the District Court under the *Kyne* exception. Section 9(c)(1) provides as follows, in pertinent part:

(c)(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

\* \* \* \* \* \*

the Board *shall investigate* such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists *shall provide for an appropriate hearing* upon due notice. \* \* \* If the Board finds upon the record of such hearing that such a question of representation exists, it *shall direct an election* by secret ballot and *shall certify* the results thereof. (Emphasis added).

All parties concede that the Board has taken no action "contrary to a specific prohibition in the Act", nor has it attempted to exercise a power that has been "specifically withheld". The Union argues, however, that the finding that a question of representation affecting commerce exists requires the Board to direct an election and to certify the results of that election. The existence and ensuing violation of such a duty is said to confer jurisdiction on the District Court to compel affirmative action by the Board.

In our analysis of the provisions of § 9(c)(1), we have the benefit of Judge Weinfeld's extensive opinion in National Maritime Union of America v. N. L. R. B., 267 F.Supp. 117 (S.D.N.Y.1967), which denied District Court review of the original Board decision in *United Fruit*. In that case, the National Maritime Union had petitioned for certification as the bargaining representative of the clerical employees of the United Fruit Company in the Canal Zone. The Union petitioned the District Court for an order to compel the Board to conduct a representation election, but the Court concluded that it was without jurisdiction over the subject matter of the action, since the statutory command of § 9(c) (1) did not meet the requirements of clarity and specificity established in *Kyne* and *Carpenters*.

The Union contends that this provision is mandatory and that if a question of representation affecting commerce exists, the Board is entirely without discretion but must direct an election. The Union's position disregards prior interpretations of and practice under 9(c)(1).

This statutory provision sets out the general steps to be followed in the processing of representation petitions: investigation; hearing; election; certification. Since the provision for each stage is preceded by the word "shall", accepting the Union's literal interpretation would mean that the section imposes upon the Board a series of mandatory steps which it must follow in processing representation petitions. Section 9(c)(1) has never been interpreted or applied in this manner; the Board has been permitted and has exercised considerable discretion in processing representation petitions. National Maritime Union v. N. L. R. B., *supra*, at 121, 122.

■ We are in agreement with the decision of the Court in National Maritime Union v. N. L. R. B., *supra*, to the effect that the provisions of § 9(c)(1) are *not* sufficiently "clear and mandatory" to fall within the exception engrafted by Leedom v. Kyne because of the discretion and leeway vested in the Board in representation proceedings, and judicial and Congressional approval of the exercise of that discretion.

We note, *inter alia*, the following parameters of Board discretion, notwithstanding the apparently mandatory language of § 9(c)(1):

*First:* Prior to the enactment of § 14(c) in 1959, the Board refused to assert jurisdiction over businesses which did not meet dollar volume standards set by the Board, even though the statutory basis for jurisdiction existed, and § 9(c) contained the same apparently mandatory language which it contains today.[3] This practice was approved by the Supreme Court in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775 (1959). It was codified in § 14(c) of the Act, 73 Stat. 541, 29 U.S.C. § 164(c)(1), which has been held to apply to representation proceedings as well as to unfair labor practices, notwithstanding a superficial inconsistency with the "mandatory" language of § 9(c)(1). See National Maritime Union v. N. L. R. B., *supra*, at 122, 123, and cases cited therein.[4]

*Second:* The Board has developed and applied the "contract-bar" doctrine, which prevents the holding of a representation election when a valid and binding collective bargaining agreement exists which is to be effective for a "reasonable" period and has been negotiated by a union with majority status prior to the claim of a rival labor organization. This doctrine is not enunciated in the Act, yet the Board has broad discretion in applying it on a case-by-case basis. See 3 Kheel, Labor Law § 13.04[1].

The contract-bar doctrine has been upheld by the courts, notwithstanding an apparent inconsistency with the purportedly "mandatory" provisions of § 9(c)(1). N. L. R. B. v. Local 3, International Brotherhood of Electrical Workers, 362 F.2d 232 (2d Cir. 1966); Local 1545, United Brotherhood of Carpenters, etc. v. Vincent, *supra*; N. L. R. B. v. Martin Building Material Company, 431 F.2d 1246 (5th Cir. 1970); N. L. R. B. v. Libbey-Owens-Ford Glass Company, 241 F.2d 831 (4th Cir. 1957); Local Union No. 492, etc. v. Schauffler, 162 F.Supp. 121 (E.D.Pa.1958).

*Third:* For many years, the Board has declined to assert jurisdiction in those situations in which statutory jurisdiction concededly exists, when the Board has determined that assertion of jurisdiction would not "effectuate the policies of the Act."

For example, there is no general statutory exclusion of nonprofit institutions,[5] but the Board will not exercise jurisdiction over nonprofit institutions engaged in noncommercial activities, even though the operations of these institutions may have a substantial effect on interstate commerce. Young Men's Christian Association of Portland, Oregon, 146 N.L.R.B. 20 (1964). But see Council 19, American Federation of State, County and Municipal Employees v. N. L. R. B., 296 F.Supp. 1100 (N.D. Ill.1968).

In Trustees of Columbia University, 97 N.L.R.B. 424 (1951), the Board spe-

---

3. The Board has referred to these minimum dollar volumes as "jurisdictional" standards. This use of the term "jurisdictional" is not correct, because the Board has statutory jurisdiction over the business, but declines to invoke this jurisdiction. N.L.R.B. v. Pease Oil Co., 279 F.2d 135, 137 (2d Cir. 1960), enforcing 123 N.L.R.B. 660 (1959). The Board's standards are properly termed "discretionary" rather than "jurisdictional". See 2 Kheel Labor Law § 8.03 [1].

4. Nor can it be argued that § 14(c)(1) operates as a limit upon the discretion of the Board to decline to exercise jurisdiction in cases which do not involve dollar volume standards. Section 14(c)(1) was enacted as

part of the Landrum-Griffin amendments in 1959, in response to the "no-man's land" in which the Board might decline to exercise jurisdiction. The states, however, were prevented from exercising jurisdiction by the decision in Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957). Section 14(c)(2) explicitly overrules the *Guss* decision, in part in response to an invitation to do so contained in *Guss*. 353 U.S. at 10–12, 77 S.Ct. 598. See McCulloch v. Sociedad Nacional, *supra*, at note 10; 2 Kheel Labor Law § 8.01 [3].

5. Section 2(2) of the Act excludes from statutory jurisdiction only nonprofit hospitals.

cifically found that the activities of the university affected commerce sufficiently to satisfy the requirements of the Act, but declined to assert jurisdiction since it would not effectuate the policies of the Act to do so. The *Columbia University* doctrine was followed by the Board for nearly two decades, without court intervention, until the Board itself overruled the earlier decision in Cornell University, 183 N.L.R.B. No. 41 (1970). But even the *Cornell University* doctrine may not be followed in cases which would not effectuate the policies of the Act to do so. Temple University of the Commonwealth System of Higher Education, 194 N.L.R.B. No. 195 (1972).

Additional examples of the exercise by the Board of its discretion to decline jurisdiction even though statutory jurisdiction exists may be found in National Maritime Union of America v. N. L. R. B., *supra*, at note 41.

We do not imply that the discretion of the Board is unlimited, nor that the Board's conclusion that a particular action would not "effectuate the policies of the Act" is necessarily the last word.[6] In the instant case, however, we are dealing not with the wisdom of a particular Board policy, nor even with its legality in the usual sense; instead we are confronted with the principles governing *jurisdiction* of Federal District Courts to review Board action. *Kyne* and *Greyhound* teach us that disagreement with the Board on a matter of policy or statutory interpretation is not a sufficient basis for assertion of jurisdiction; under such circumstances, we do not have the right to consider the merits of a particular controversy. To the contrary, our jurisdiction is properly limited to intervention in those cases and only in those cases in which the Board has violated a "clear and mandatory" command of the Act. In light of the history of administrative and judicial interpretation of the Act, we hold that

the provisions of § 9(c)(1) which require the Board to *direct an election* once it is determined that a question of representation affecting commerce exists are not sufficiently "clear and mandatory" to confer jurisdiction on federal District Courts under Leedom v. Kyne.

II. *Fay v. Douds*

The Union further contends that this Court has jurisdiction to review the Board's order under the doctrine of Fay v. Douds, 172 F.2d 720 (2d Cir. 1949). We do not agree.

Fay v. Douds involved a dispute between two unions over representation of employees in a bargaining unit. Local 475, United Electrical, Radio and Machine Workers of America, CIO, was the exclusive bargaining agent for the employees, but the Board found that the collective bargaining agreement had been opened up for negotiation, and the contract bar rule was therefore inapplicable to prevent a representation election. The United Automobile, Aircraft and Agricultural Implement Workers of America, CIO, filed a petition with the Board for certification as the exclusive bargaining agent of the employees. The Regional Director ruled that Local 475 had not complied with certain provisions of the Act, and therefore lacked status to object to a consent election. The Local protested this ruling to the Regional Director and to the Board, but its objections were overruled, without a hearing. The election was subsequently held, using a ballot that contained only the name of the Automobile Workers Union, which received a majority of the votes cast, and was thereupon certified by the Board. Local 475 brought suit in the District Court, which dismissed the complaint. The Court of Appeals for the Second Circuit, per Learned Hand, Ch. J., affirmed on the merits, but upheld the jurisdiction of the District Court to entertain the action.

---

6. Judicial review of the Board's action is normally by means of a petition for enforcement or review under §§ 10(e) and 10(f). In cases properly before the Court of Appeals under § 10, of course, a purported exercise of discretion by the Board would be subject to challenge.

Chief Judge Hand's opinion relied upon dictum in an earlier Second Circuit Case, Fitzgerald v. Douds, 167 F.2d 714 (2d Cir. 1948), which stated that while Congress might grant or withhold judicial review of administrative action within a statutory framework, there could be situations in which the Constitution required such review. *Fitzgerald, supra*, at 717. The plaintiff in *Fay* claimed that under the circumstances of that case there was a constitutional right to District Court review of the Board's action. The Court of Appeals agreed, but based its decision on the denial of a hearing by the Board:

> The first question is as to the jurisdiction of the District Court which the defendant disputes, invoking our decision in Fitzgerald v. Douds. We there held that, since the only review of a "certification" proceeding under § 9 was as an incident to a petition to review an order of the Board under § 10, the remedy so created was exclusive; although we recognized that the result might be otherwise, if a constitutional question were raised. The plaintiff at bar does raise such a question; he asserts that the Local has a "property" right in the maintenance of its position as the exclusive bargaining agent, and that this was substantially invaded by denying its privilege of a hearing upon the "investigation", preparatory to deciding whether an election should be called. If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; and, having once acquired jurisdiction, the court might, and should, dispose of all other questions which arose, even though they would not have been independently justiciable. Although, as will appear, we do not think that the Local was denied any constitutional right, we do think that its contention is not so plainly untenable that the District Court might not proceed to decide the issues involved. The Local's interest in remaining the exclusive bargaining agent was of great importance to it, and to dispense with the "investigation" on the outcome of which depended the calling of an election, would imperil its position, even though it could not be "certified" upon an election. To do this without any hearing can plausibly be thought to be a denial of due process of law. * * * *Fay, supra*, at 723. (footnotes omitted.)

The decision in *Fay* preceded Leedom v. Kyne by nine years. The doctrine established therein has never been recognized by the Supreme Court, and there is considerable doubt as to its validity, in light of the narrow exception delineated in *Kyne, Greyhound*, and *Sociedad Nacional*. The doctrine has been questioned in several lower court decisions, see Greensboro Hosiery Mills, Inc. v. Johnston, 377 F.2d 28, 32 (4th Cir. 1967), and Boire v. Miami Herald Publishing Company, 343 F.2d 17, 21 (5th Cir. 1965), cert. den. 382 U.S. 824, 86 S. Ct. 56, 15 L.Ed.2d 70 (1965), and its future appears uncertain even in the Second Circuit, Herald Company v. Vincent, 392 F.2d 354, 359 (2d Cir. 1968).

The *Fay* doctrine has never been adopted in the Third Circuit, and there is at least one case which has rejected its basic premise, though without reference to Fay v. Douds. In Firestone Tire & Rubber Company v. Samoff, *supra*, two labor organizations were competing to organize the employees in a particular plant. An election was held, and the employees voted against being represented by either union. After an objection to the election was filed by one of the unions, the Regional Director determined that the employer had impermissibly interfered with the free choice of the employees in the election, and ordered a second election. The employer filed suit in the District Court to enjoin the second election, and a preliminary injunction was granted, on the grounds that the Board had violated a specific prohibition of the Act [§ 9(c)(3)], and had "violated the Company's constitutional right in not offering it an opportunity to be heard before the second election

was directed * * *." *Firestone, supra,* at 627. The Court of Appeals for the Third Circuit reversed, and held that the District Court lacked jurisdiction to grant the requested relief. The Court rejected the employer's claim that a "violation" of § 9(c)(3) conferred jurisdiction on the District Court under the theory of Leedom v. Kyne, and went on to state, at 628:

> " * * * there is no provision in the Act which requires a hearing on objections to an election based on pre-election conduct. *The question whether the Constitution required it is not of itself grounds for jurisdiction in the district court. * * *"*
> (emphasis added)

In light of this statement, and the Court's disposition of the case, it seems extremely unlikely that a Fay v. Douds theory of District Court jurisdiction would be adopted in the Third Circuit.

However, even assuming that Fay v. Douds accurately states the law, the Union in the present case could not rely on that decision to support jurisdiction in this Court. The *Fay* doctrine was explicitly based upon the *denial of a hearing* by the Board when a property right is at issue.[7] As the Court stated:

> [To dispense with an investigation] *without any hearing* can plausibly be thought to be a denial of due process of law. * * * *Fay, supra,* at 723.
> (Emphasis added)

In the present case, the Union had a full hearing before a hearing examiner, and the record of this proceeding was the basis for the Board's decision.

Authority in the Second Circuit since Leedom v. Kyne has made it clear that Fay v. Douds is to be limited to denials of procedural due process—the refusal by the Board to hold a hearing before taking action which would adversely affect the plaintiff—and is not intended to affect the discretion of the Board in dealing with representation matters. In McLeod v. Local 476, United Brotherhood of Industrial Workers, 288 F.2d 198 (2d Cir. 1961), a full hearing had been held by the Board in which the plaintiff was permitted to intervene. In rejecting the contention that the Board's application of the contract bar doctrine had deprived plaintiff of a constitutional right so as to confer jurisdiction on the District Court, the Court of Appeals stated:

> In the instant case the appellee urges that the complaint presents a substantial constitutional question and hence comes within the Fay v. Douds exception to the general rule. We perceive no constitutional issue in this case. That question is discussed in this court's opinion in Local 1545 v. Vincent, supra. Congress has left to the Board much freedom of action in its handling of representation matters, including questions of contracts as bars to elections. If the Board has, in the instant case, exercised its discretion unwisely, even unreasonably, that raises no constitutional issue. Congress, by its refusal to confer jurisdiction on the District Courts, and the courts, by their adoption of the general rule subject only to the two exceptions recited above [Fay and Kyne], have made the important decision that an occasional unreasonable action by the Board, though it goes uncorrected by the courts, is a lesser evil than would be the frustration of seasonable elections by a broadened exposure of election questions to litigation. As is the case with any general rule, its application to particular cases may result in an injustice. If those injus-

---

7. Because of our disposition of the case, it is unnecessary to reach the subsidiary issue of whether the Union's "expectancy" of winning an election and becoming the exclusive bargaining agent for the employees in question is a sufficient property interest to bring into play the due process clause of the 5th Amendment. *Compare* Amalgamated Meat Cutters etc. Local 576 v. Allen, 298 F.Supp. 985 (W.D.Mo.1969), aff'd 423 F.2d 267 (8th Cir. 1970) *with* Council 19, American Federation of State, County, and Municipal Employees v. N.L.R.B., *supra.*

tices occur frequently enough, and are serious enough, they may cause Congress to amend the legislation, or may cause the courts to invent additional exceptions. This case does not create in us the urge to invent an additional exception. If it did so, the exception would be most difficult to define, or to confine within tolerable boundaries. *Local 476, supra,* at 201.

■ We conclude, therefore, that even if the rationale of Fay v. Douds were adopted by the Third Circuit, the doctrine established in that case is inapplicable under the circumstances of the case at bar, because the Union has been afforded a complete hearing by the Board, and the alleged constitutional deprivation amounts to nothing more than disagreement with the manner in which the Board has exercised its judgment in the discretionary area of representation proceedings. *Local 476, supra.*

We recognize that at least one District Court has decided to the contrary, Council 19, American Federation of State, County and Municipal Employees v. N. L. R. B., *supra.* But we are convinced that such an exception is not consistent with the Supreme Court decisions in *Kyne, Greyhound,* and *Sociedad Nacional,* and that it would be "most difficult to define, or to confine within tolerable boundaries". *Local 476, supra,* at 201.

Hence, we conclude that Fay v. Douds does not and cannot confer jurisdiction upon us under the facts of this case.

III. *The Administrative Procedure Act.*

The Union's final contention is that this Court has jurisdiction to review the Board's action pursuant to § 10 of the Administrative Procedure Act, now 5 U.S.C. § 701 *et seq.* (hereinafter A.P.A.). Pertinent portions of the A.P.A. are set forth in the footnote.[8]

---

8. § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392.

§ 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392.

§ 704. Actions reviewable.

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or

determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392.

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

There has been considerable dispute in the courts and among commentators as to whether the provisions of the A.P.A. were intended as an affirmative grant of jurisdiction to the district courts to review agency action when there is no other jurisdictional basis for review. See Charlton v. United States, 412 F.2d 390, 396 (3d Cir. 1969) (concurring opinion of Judge Stahl); State of Delaware v. Pennsylvania New York Central Transportation Company, 323 F.Supp. 487, 494–495 (D.Del.1971).

The Third Circuit, however, has settled this issue by ruling that the A.P.A. provisions in question in the instant case are remedial and not jurisdictional in nature. Local 542, International Union of Operating Engineers v. N. L. R. B., 328 F.2d 850, 854 (3d Cir. 1964); Zimmerman v. United States Government, 422 F.2d 326, 330–331 (3d Cir. 1970); Framlau Corporation v. Dembling, 360 F.Supp. 806, 808 (E.D.Pa. 1973). As the Court noted in *Local 542, supra,* at 854:

> \* \* \* There is nothing in Section 10 or any other clause of the [Administrative Procedure] Act which extends the jurisdiction of either the district courts or the appellate courts to cases not otherwise within their competence. Ove Gustavsson Contracting Company v. Floete, 278 F.2d 912, 914 (2d Cir. 1960), cert. den. 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188;

Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, 933 (1955), cert. den. 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780. The Act is clearly remedial and not jurisdictional.

We therefore conclude that § 10 of the A.P.A. does not provide an independent jurisdictional basis in the instant action. To hold otherwise would permit plenary District Court review of orders of the Board, a result clearly inconsistent with the exceedingly narrow limits of federal District Court jurisdiction fashioned by the Supreme Court in *Kyne, Greyhound,* and *Sociedad Nacional.*[9]

\* \* \*

Hence, we conclude that this Court lacks jurisdiction over the subject matter of the instant action. Since we will dismiss the complaint on jurisdictional grounds, we need not rule upon the Board's alternative contention that the complaint fails to state a claim upon which relief can be granted.

Dismissal of the Union's complaint in this Court may effectively foreclose the possibility of judicial review of the Board's refusal to assert jurisdiction in the Canal Zone. For those who are imbued with what Professor Jaffe has called the "presumption of judicial review",[10] such a result may not be congenial. We are convinced, however, from our analysis of the controlling leg-

---

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 393.

9. We note that Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961) held that § 10(e) of the A.P.A. conferred jurisdiction on the District Court to compel the Board to proceed with reasonable expedition in the disposition of its business. The subsequent decisions which have discussed *Deering Milliken* have limited the holding in that case to the situation in which the Board is accused of unreasonable delay.

Chicago Automobile Trade Association v. Madden, 328 F.2d 766, 769–770 (7th Cir. 1964); Intertype Co., Div. of Harris–Intertype Corp. v. Penello, 269 F.Supp. 573, 579 (W.D.Va.1967); Local 542, International Union of Operating Engineers v. N.L.R.B., *supra,* at 854. *See also* Templeton v. Dixie Color Printing Co., *supra,* at note 3. The Supreme Court has never recognized such an exception to the general rule of non-reviewability of Board orders in the District Court. In any event, the *Deering Milliken* decision has no applicability in the present case, because unreasonable delay by the Board is not advanced as a ground for relief.

10. Jaffe, The Right to Judicial Review I, 71 Harv.L.Rev. 401 (1958).

islation and its history, that Congress intended to so limit the role of the courts when it drafted the carefully circumscribed review provisions of the Act. It may well be that the occasional injustice which results from this statutory scheme is too high a price to pay for expediting the vast majority of representation elections. It may also be that the Act should permit judicial review when unions are not certified under § 9(c) proceedings. But, as Mr. Justice (later Chief Justice) Stone concluded more than thirty years ago, "these are arguments to be addressed to Congress and not the courts."[11]

The following Order will be entered accordingly:

[11]. American Federation of Labor v. N.L.R.B., *supra*, at 411, 412, 60 S.Ct., at 305.